**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **NEVILLE EWELL II and DONTA DAVIS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**OKMULGEE COUNTY CRIMINAL JUSTICE AUTHORITY, et al.,**<br><br>**Defendants.** | **Case No. 25-CV-293-GLJ** |

## OPINION AND ORDER

This matter comes before the Court on Defendant Okmulgee County Criminal Justice Authority's ("OCCJA") Motion for Summary Judgment. Docket No. 40. Plaintiffs Neville Ewell II ("Ewell") and Donta Davis ("Detainee Davis") allege a § 1983 municipal liability claim against OCCJA. Docket No. 2 at 9-10. Specifically, Ewell and Detainee Davis allege "[t]here is an affirmative link between the [] excessive force utilized by DO Davis on Plaintiffs and policies, practices and/or customs which [] OCCJA promulgated, created, implemented and/or possessed responsibility for." *Id.* at 9. For the reasons set forth below, OCCJA's Motion Summary Judgment [Docket No. 40] is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

Ewell and Detainee Davis (collectively, "Plaintiffs") filed their Complaint on August 19, 2025, asserting a municipal liability claim against OCCJA. Docket No. 2 at 9-10.[1] Plaintiffs also each assert an individual capacity claim against Defendant Lino Davis ("Defendant Davis") for

---

[1] The Court's citations refer to the CM/ECF header pagination.

excessive force. Docket No. 2 at 8-9.[2,3] OCCJA filed its Motion for Summary Judgment [Docket No. 40] on July 29, 2026, and it is now ripe. *See* Docket Nos. 40, 50, 53. OCCJA contends there is no underlying constitutional violation of either Ewell or Detainee Davis's constitutional rights and, even if there was a constitutional violation, it was not caused by OCCJA's policies, practices, customs, inadequate training or inadequate supervision. *See* Docket No. 40.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence is to be taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party "asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c). Indeed, "[i]f the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kaul v. Stephen*, 83 F.3d 1208, 1212

---

[2] The Court addressed this claim in its contemporaneous Opinion and Order addressing Defendant Davis's Motion for Summary Judgment. *See* Docket No. 56.

[3] Ewell and Detainee Davis originally asserted a supervisory liability claim against Defendant Shannon Clark. Docket No. 2 at 10-11. However, on August 31, 2026, Ewell, Detainee Davis and Shannon Clark filed a Joint Stipulation of Dismissal with Prejudice as to Defendant Shannon Clark. Docket No. 51.

(10th Cir. 1996) (*quoting Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995)). The Supreme Court of the United States ("Supreme Court") has stated that the "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**FACTUAL BACKGROUND**

The following undisputed facts are gleaned from the record. On April 12, 2021, a "riot-like disturbance" broke out among the forty-seven (47) individuals housed in the X-Pod of OCCJA's Moore Detention Center. *See* Docket Nos. 38-4, 38-5, 38-6, 38-7, 38-8, 38-11, 38-12, 38-13, 42-1, 42-6, 42-15. The X-Pod housed mainly federal inmates. Docket No. 38-3 at 4. Detainee Davis and Ewell were both housed in the X-Pod at the time. *See* Docket No. 49-3 at 2-3; *see also* Docket No. 49-4 at 1. Detainee Davis was a pretrial detainee awaiting a new trial after his first conviction was vacated due to *McGirt v. Oklahoma*, 591 U.S. 894 (2020). Docket No. 38-2. Ewell was a convicted federal prisoner. Docket No. 38-1.

On the evening of April 12, 2021, around 8:00 p.m., inmates in the X-Pod were observed fighting, drinking contraband alcohol and fashioning weapons out of brooms and mops. *See* Docket No. 38-12. In response to the disturbance, the Corrections Emergency Response Team ("CERT Team"), a specialized unit within the OCCJA, was activated to gain control of the situation. *Id.*; Docket No. 38-11 at 1. Defendant Davis responded to the Moore Detention Center as part of CERT Team. Docket No. 38-11. Defendant Davis was armed with a "less lethal" shotgun, beanbag rounds, and rubber pellet rounds. *Id.* at 2; *see also* Docket No. 49-2 at 13. Around 10:30 p.m., the CERT Team, along with officers from the Okmulgee County Sheriff's Office, entered the X-Pod. *See* Docket No. 42-17; *see also* Docket Nos. 38-4; 38-7. These

officers were initially greeted with chunks of cement, food trays and broken broom/ mop handles being thrown at them. *See* Docket Nos. 38-11 at 2; 38-12 at 1; 38-13 at 1. In response, the officers deployed rubber pellets, beanbags, pepper balls and CS gas to ultimately bring the inmates into compliance. Docket Nos. 38-6; 38-8; 38-12. Once the officers gained control of the X-Pod, the inmates were handcuffed and removed, one at a time, to the recreation yard ("rec yard"). Docket Nos. 38-6; 38-8; 38-12. Detainee Davis and Ewell were ultimately seated next to each other near a corner. *See* Docket No. 42-17 at 22:34:39.

After the inmates were in the rec yard, CLEET certified Defendant Davis returned to the rec yard and fired a warning shot into the air. Docket Nos. 42-17 at 22:34:18; 38-3 at 5-6, 26; 42-9 at 5. The inmates were then ordered to lay down on their stomachs. Docket No. 38-3 at 5. Shortly after, Defendant Davis is seen on video footage walking in the rec yard. *See* Docket No. 42-17 at 22:34:39. He then lifts his shotgun, aims and fires it while walking towards Detainee Davis and Ewell. *See id.* at 22:34:39-22:34:43. Ultimately, Detainee Davis was struck once by Defendant Davis's rubber pellets, and Ewell was struck multiple times by Defendant Davis's rubber pellets. *See* Docket Nos. 42-20 through 42-23.

OCCJA maintained a Use of Force policy that provided,

> All officers will receive training in self-defense, confrontation avoidance techniques and the use of force to control detainees, to include use of force team technique. Specialized training is given to officers ensuring they are certified in all devices including chemical agents that are approved for use. Staff use physical force only as a last resort after all reasonable efforts to otherwise resolve a situation have failed.

Docket No. 42-28 at 1. The Use of Force policy also required officers to receive initial and annual training regarding the "use-of-force continuum" and "confrontation-avoidance techniques." *Id.* at 2. Specifically regarding "less lethal weapons," OCCJA's policy stated, "absent exigent circumstances, any weapon which is not authorized or for which training is not provided should

not be deployed in use-of-force situations." *Id.* The policy also stated, "a detention officer may only carry a weapon if they receive training on the weapon's safety and proper usage and qualify with it." *Id.* at 3.

Upon the discharge of any firearm, accidentally or intentionally, the OCCJA policy required the officer to "prior to going off duty after the incident, submit a use of force report using the Use of Force form (OCCJA Policy form 09-01a) to the Shift Supervisor." *Id.* at 6. Subsequently, the shift supervisor is to "immediately initiate an investigation involving the use of physical force." *Id.* at 7. The policy also required "each detention officer involved in any incident involving the use of force or a presentation [to] complete a Use of Force incident report." *Id.* at 7. "All uses of force and the non-routine application of restraints will be reviewed by the Review Committee." *Id.* at 7. And, "any OCCJA employee witnessing any use of force which they believe to be contrary to law or OCCJA Policies must, to the extent permitted by the circumstances, attempt to stop that improper use of force, report it to their immediate supervisor and write a memo." *Id.* at 10. Finally, "[t]he Facility Director's Office Review Board will review all immediate or calculated use of force incidents. The review board will make a finding as to whether the use of force was appropriate and in accordance with policies and procedures[.]" *Id.* at 11.

## ANALYSIS

### I. Municipal Liability Claim

The Supreme Court in *Monell v. Department of Social Services of the City of New York* held that a municipality can be liable under Section 1983 only where the municipality itself causes the constitutional violation at issue. 436 U.S. 658, 690–91 (1978). And the Supreme Court has further held that "[i]t is only when the execution of the government's policy or custom . . . inflicts

the injury that the municipality may be held liable under [Section] 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks omitted). In other words, to succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Walker v. City of Orem,* 451 F.3d 1139, 1152 (10th Cir. 2006) (internal citation omitted).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). For municipal liability to attach, there must be a "direct causal link between the policy or custom and the injury alleged." *Id.*

## II. Constitutional Violation

OCCJA leads with the position that there is no underlying constitutional violation of Ewell's rights, therefore, OCCJA is not liable as to his claim. *See* Docket No. 40 at 13-15.[4] However, as thoroughly articulated in the Court's contemporaneous Opinion and Order ruling on Defendant Davis's Motion for Summary Judgment [Docket No. 38], there are genuine issues of material fact regarding Defendant Davis's use of force against both Plaintiffs. *See* Docket No. 56. The Court cannot dispose of the first element, an underlying constitutional violation, on summary judgment. *Cordova v. Aragon*, 569 F.3d 1183, 1193-94 (10th Cir. 2009). Therefore, the

---

[4] Interestingly, OCCJA does not assert the same argument with respect to Detainee Davis. *See* Docket No. 40 at 13-15.

municipal liability claim against OCCJA survives summary judgment "unless [the Court] finds that [the Plaintiffs] have failed to create a genuine issue of material fact as to whether a municipal policy or custom was the moving force behind the constitutional deprivation." *Id.* at 1194. Accordingly, the Court will proceed to this inquiry.

## III. Failure to Adequately Train

Plaintiffs maintain they seek to hold OCCJA liable because of its failure to adequately train its employees. Docket No. 50 at 20-24. Under United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") precedent, to recover from OCCJA on their failure to train claim, Plaintiffs need to prove three (3) elements: i) the existence of a county policy or custom involving deficient training; ii) the policy or custom's causation of an injury; and iii) the county's adoption of a policy or custom with deliberate indifference. *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021). The Court addresses each element below.

### A. Deficient Training

Despite OCCJA's contention that Defendant Davis had over "500 hours of CLEET law enforcement training" that included "training on appropriate uses of force" [Docket No. 40 at 10-11], Plaintiffs have put forth sufficient evidence of a genuine issue of material fact concerning the existence of a custom involving deficient training. Defendant Davis testified he was trained by OCCJA that when a verbal command is refused, force may be used to compel compliance. The following occurred during Defendant Davis's deposition:

> Q: Sometimes I refer to that as using force for compliance, okay? First you try to gain compliance with a verbal command, right?
>
> A: Yes.
>
> Q: And then if you can't get what you want out of the verbal command, then you can elevate it and you can use force to get compliance; is that how you were trained?
>
> A: Yes.

Docket No. 50-5 at 5.

> Q: Regardless of the movement, whether it's a finger twitch or you think that they roll a different direction or you think a knee is up to the chest, the mere fact that they're refusing the command is what's justifying the use of force, correct?
>
> A: Yes, if they refuse to do something, then you can make them do that, yes.

*Id.* at 29.

> Q: You were trained that if you gave the verbal command, right, and they did not respond to the verbal command, that you could then use nonlethal force to achieve the goal of that command, yes?
>
> A: I believe I was.
>
> Q: Okay. That's how were trained? It didn't require an extra step, fair?
>
> A: That's fair.
>
> Q: Okay. In this case, you think there was an extra step?
>
> A: I believe that there was, yes.

*Id.* at 30. Defendant Davis also clarified after his deposition,

> According to my training, I am permitted to use a nonlethal shotgun against an inmate who is not complying with a verbal commands, even if the inmate does not engage in a second step of active resistance.

Docket No. 50-7 at 2.

Tenth Circuit guidance does not support the conclusion that this training Defendant Davis received was in alignment with constitutional norms. Tenth Circuit precedent establishes an officer may not use nonlethal force on a pretrial detainee who is in handcuffs, not resisting and does not pose an immediate threat. *See Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014); *see also Chapman v. Hedderman*, 2021 WL 2149322, at *5 (W.D. Okla. May 26, 2021) (unpublished)[5] (The Tenth Circuit has "made clear that using less lethal weapons . . . on subjects who do not pose an immediate threat to officers can constitute excessive force."). Precedent also holds officials may not use gratuitous force against a prisoner who has already been subdued.

[5] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

*Miller v. Glanz*, 948 F.2d 1562, 1567 (10th Cir. 1991); *Skritch v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *Giles v. Kearny*, 571 F.3d 318, 326 (3d Cir. 2009); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016). Therefore, a reasonable factfinder could conclude training an officer to not evaluate the immediate threat, but instead to engage force based alone on an inmate's failure to comply with a verbal command, was deficient.

Plaintiffs also put forth evidence that in April of 2021, Defendant Davis had not received any annual training on use of force since 2020. Docket No. 50-5 at 31-32. Nor is there any evidence that Defendant Davis was certified using the less-lethal shotgun he was provided on April 12, 2021. *See* Docket No. 42-31 at 26. This is despite OCCJA's policy that "all officers will receive training in . . . use of force to control detainees" and "absent exigent circumstances, any weapon which is not authorized or for which training is not provided should not be deployed in use-of-force situations." Docket No. 42-28 at 1-2. Furthermore, in July 2020, the Department of Homeland Security's Office of Detention Oversight ("ODO") found staff at the Moore Detention Center were not annually trained with confrontation avoidance techniques. Docket No. 50-8 at 10. Taken together, a reasonable factfinder could conclude OCCJA possessed a custom of failing to provide its officers with adequate training.

**B. Causation**

To establish causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)). Here, the use of a nonlethal shotgun loaded with rubber pellets in close range to handcuffed inmates was arguably closely related to Defendant Davis's inadequate training. A reasonable factfinder could conclude the failure of OCCJA to: i)

provide confrontation avoidance techniques; ii) ensure Defendant Davis was certified using the less-lethal shotgun; and/or iii) ensure Defendant Davis received use of force training that required consideration of more than whether an inmate was complying with verbal commands was closely related to Defendant Davis's decision to deploy his less-lethal shotgun in the rec yard on April 12, 2021.

**C. Deliberate Indifference**

Finally, deliberate indifference can exist "when a county fails to train jail guards on how to handle recurring situations presenting an obvious potential to violate the Constitution." *Lance*, 985 F.3d at 801 (citing *Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997)). To determine if a county was deliberately indifferent, the Tenth Circuit has articulated a three (3) part test: i) county policy maker's know to a moral certainty that their employees will confront a given situation; ii) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and iii) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights. *Id.* at 802.

First, OCCJA possessed a policy entitled "Riot and Disturbance Plan" along with a "Use of Force" policy. Docket Nos. 42-27; 42-28. These policies demonstrate OCCJA's belief that its employees will routinely confront situations where an officer must decide whether to deploy force. Furthermore, in the Court's estimation, encountering noncompliant inmates is part and parcel to operating a detention facility. Therefore, there is sufficient evidence in the record for a reasonable factfinder to conclude OCCJA's policy makers knew to a moral certainty their employees would confront noncompliant, handcuffed inmates regularly. Second, how to respond to noncompliant inmates is undoubtedly a difficult choice of the sort that training or supervision will make less difficult. *See, e.g., Estate of Burnett v. City of Co. Springs*, 763 F. Supp. 3d 1281,

1292 (D. Colo. 2025); *see also Merrill v. Seagraves*, 2025 WL 1905572, at *14 (E.D. Okla. Apr. 18, 2025) (unpublished), *report and recommendation adopted* 2025 WL 1795112 (E.D. Okla. June 30, 2025). Similarly, the wrong choice regarding the use of force will frequently cause the deprivation of a citizen's constitutional rights. *See Estate of Burnett*, 763 F. Supp. 3d at 1292; *see also Merrill*, 2025 WL 1905572, at *14. The Court concludes Plaintiffs presented sufficient evidence for a jury to conclude OCCJA was deliberately indifferent regarding training officers concerning appropriate uses of force.

After thoroughly analyzing the elements of a failure to train municipal liability claim, the Court concludes there are genuine issues of material fact that would allow a jury to conclude there is a direct causal link between the custom of deficient training and the Plaintiffs' injuries. Therefore, summary judgment as to this variation of Plaintiffs' municipal liability claim is unwarranted.

## IV. Custom of Unreported, Uninvestigated and Unremedied Uses of Force

Plaintiffs also argue OCCJA is liable for failing to enforce its own Use of Force policy. *See* Docket No. 50 at 25-27. As mentioned above, to carry their burden with respect to this municipal liability claim, Plaintiffs must demonstrate: i) the existence of a policy or custom; ii) a direct causal link; and iii) deliberate indifference. *Lance*, 985 F.3d 800.

### A. Persistent and Widespread Practice

First, to establish municipal liability on the basis of a custom, the challenged conduct must be a "persistent and widespread" practice. *See Monell*, 536 U.S. at 691. "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that *similarly situated* individuals were mistreated by the municipality in a *similar* way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)

(emphasis added); *see also Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (rejecting argument that deputy's unprovoked attack on detainee in front of judge was sufficient to infer existence of municipal custom or practice, where plaintiff alleged only one similar incident of excessive force prior to his own injuries). "Although the Tenth Circuit has never adopted a bright-line rule as to the number of similar incidents required to establish the existence of a custom, most courts, including the Tenth Circuit, have concluded that a single incident – or even three incidents – do not suffice." *Tackett v. Morgan*, 2025 WL 409658, at *6 (E.D. Okla. Feb. 5, 2025) (unpublished); *see also Williams v. City of Tulsa*, 627 Fed. App'x 700, 704 (10th Cir. 2015). And although no set number is required, "where misconduct is unique, a plaintiff does not need to allege as many similar incidents." *Hernandez v. City of Cty. of Denver*, 2022 WL 3597452, at *6 (D. Colo. Aug. 23, 2022) (unpublished). However, "where the misconduct is not unique, as here, a plaintiff must allege more incidents." *Id.*

Construing the facts in the light most favorable to Plaintiffs, Plaintiffs do provide evidence of multiple allegedly unreported uses of force. OCCJA's own policy required "[e]ach detention officer involved in any incident involving the use of force or a presentation will complete a Use of Force incident report," and that "[a]ll use of force . . . will be revied by the Review Committee." Docket No. 42-28 at 7. OCCJA's policy also required any officer who witnessed use of force "which they believe to be contrary to law or OCCJA Policies must, to the extent permitted by the circumstances, attempt to stop that improper use of force, report it to their immediate supervisor and write a memo." *Id.* at 10.

Plaintiffs first emphasize OCCJA's lack of any documentation regarding use of force and failure to implement a use of force form until after the April 12, 2021 incident, despite the policy to the contrary. Docket Nos. 50 at 25; 50-4 at 24-25; 50-1 at 54. However, Christopher Cook,

Deputy Executive Director, and Shannon Clark, Executive Director, both indicated that while a specific use of force form was not implemented prior to 2022, uses of force were memorialized in incident reports. *See* Docket Nos. 50-1 at 54; 50-4 at 25. Furthermore, OCCJA emphasizes the 2020 ODO report noted, "[p]rior to the completion of the inspection, the facility staff created and implemented a new form for future use to document UOF incidents . . . ." Docket No. 50-8 at 10.

Next, to establish a "persistent and widespread practice," Plaintiffs provide the following evidence. First, during a single, unidentified reporting year, there were sixty-one (61) uses of force, but no use of force forms were completed for these instances. Docket No. 50 at 25; *see also* Docket No 50-4 at 4-5, 23. OCCJA does not dispute this factual assertion. Docket No. 53 at 2 ("Admitted, but irrelevant."). Second, Plaintiffs note two (2) use of force incidents reviewed by the ODO noted detainees were "in a secure cell with no immediate threat to themselves or others" and staff "could have responded following the guidelines for a calculated use of force to minimize the harm to detainees or staff." Docket No. 58-8 at 11. Third, Plaintiffs note OCCJA failed to follow its own policy that required a yearly use of force analysis. Docket No. 50 at 26; *see also* Docket No. 42-28 at 12. Fourth, Plaintiffs point to Chief Deputy, of the Okmulgee County Sheriff's Office, Smokey Patchin's use of force on April 12, 2021, in response to the disturbance and in the rec yard. Docket No. 50 at 26; *see also* Docket Nos. 50-10; 42-10; 42-17. Finally, Plaintiffs rely on Ewell's deposition testimony that he witnessed Defendant Davis shoot inmates with a less-lethal weapon on two (2) occasions because the inmates were not moving fast enough. Docket Nos. 50 at 27; 50-2 at 3-6.

While the possible lack of use of force forms is concerning, without evidence regarding these identified, specific instances, the Court cannot conclude these examples, even construed in

the light most favorable to Plaintiffs, establish a persistent and widespread practice that similarly situated individuals were mistreated in a similar way. *Carney*, 534 F.3d at 1274. Concerning the sixty-one (61) uses of force, Plaintiffs do not articulate the year of these instances, if the instances even involved Defendant Davis, or if the instances occurred in analogous situations. The Court understands Plaintiffs' premise, but without anything further all the Plaintiffs offer is speculation that the use of force in those instances was similar and unjustified. Plaintiffs' reliance on the two (2) instances identified by the ODO is curious considering these instances were reported in some form otherwise there would have been nothing for the ODO to review. Furthermore, the report reveals the ODO concluded, "staff conducted the UOF following the proper guidelines for an *immediate* UOF incident, the PBNDS 2011, for UOF&R identifies this type of circumstance as a *calculated* UOF situation." Docket No. 50-8 at 11 (emphasis added). Again, without additional details, the Court cannot conclude these two (2) instances were similar to the case at bar. *See Hernandez*, 2022 WL 3597452, at *6. Plaintiffs do not articulate if the use of force used by Defendant Davis would be considered "immediate" or "calculated" under the ODO's standards or what guidelines staff did or did not follow in the previous two (2) instances. *See* Docket No. 50 at 25.[6]

Further, Patchin was not an OCCJA employee. *See* Docket No. 42-1. Therefore, Patchin's conduct cannot be used to establish a persistent and widespread practice by OCCJA. This leaves Defendant Davis's use of force on April 12, 2021, and the two (2) instances identified by Ewell wherein Defendant Davis allegedly deployed "less-lethal" force to gain speedier compliance.

[6] "In the same way a court may not construct legal arguments for a pro se litigant, it is even less so the court's role to construct legal arguments for a party represented by counsel." *Spence v. Three Birds Alliance*, 2026 WL 2017172, at *3 (D. Colo. July 16, 2026) (unpublished).

Docket Nos. 50 at 27; 42-18; 50-8 at 11. Accepting Plaintiffs' premise that these three (3) instances involved similarly situated individuals who were mistreated in a similar way, the Court concludes three (3) instances are insufficient to establish a widespread practice or custom. *See Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("a single incident – or even three incidents – do not suffice."); *see also Roquemore v. El Paso Cty., Co.*, 2024 WL 4268154, at *6 (D.Colo. Aug. 21, 2024) (unpublished) ("four instances is an insufficient number to constitute a widespread pattern of conduct."), *report and recommendation adopted by* 2024 WL 4267874 (Sep. 23, 2024).[7] For these reasons, the Court concludes Plaintiffs have not established a persistent and widespread practice.

**B. Causation**

Even if the Court were to conclude Plaintiffs' evidence is sufficient to establish a persistent and widespread practice, the Court finds that Plaintiffs fail to carry their burden regarding causation. Plaintiffs argue, "it is a custom that is causally related to the incident at issue here. First, an agency that never documents, reviews or investigates force cannot identify – much less correct – officers who misuse it. Second, officers who know that force is never reviewed have every reason to believe that the training they received is correct and that no one will ever second guess-them." Docket No. 50 at 25-26.

---

[7] Plaintiffs argue, "[a]n entity that abandons the mechanism of its own policy created to detect patterns of excessive force cannot argue that no pattern was documented. Indeed, the policy violation is itself evidence of deliberate indifference." Docket No. 50 at 26. To the extent Plaintiffs' position is that it cannot establish a widespread practice due to OCCJA's lack of documentation, *Tackett* demonstrates even when proceeding under a "nonenforcement of policy" theory, it is possible for a plaintiff to produce evidence of a persistent and widespread practice. *See Tackett*, 2025 WL 409658, at *6-*7.

To establish the causation element, the custom must be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. This requirement is satisfied if a plaintiff shows "the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs ask this Court to speculate that the identified prior uses of force were inappropriate and never investigated leading to Defendant Davis's use of force against Plaintiffs on April 12, 2021. *See* Docket No. 50 at 25-27.

However, as noted above, Plaintiffs first fail to establish the identified prior uses of force were factually similar to the incident at issue. *See supra.* Second, the only evidence Plaintiffs proffer regarding the alleged lack of investigations into prior incidents is Deputy Executive Director Christopher Cook's testimony. Docket No. 50 at 16 ("OCCJA had never conducted an internal investigation of a use of force before this one." (citing to Docket No. 50-1 at 2)). Christopher Cook testified during his deposition that, before the investigation into Lino Davis's use of force, *he* had not conducted any internal affairs investigations involving uses of force. Docket No. 50-1 at 2. The lack of any investigation into prior uses of force by Christopher Cook (during an unspecified timeframe) does not establish OCCJA never investigated previous uses of force. Accordingly, the Court cannot make the logical leap Plaintiffs present. In all, Plaintiffs evidence fails to demonstrate the purported custom of failing to report, investigate and remedy inappropriate uses of force was closely related to the violation of Plaintiffs' constitutional rights.

Accordingly, summary judgment in OCCJA's favor, as it relates to Plaintiffs' claim that OCCJA maintained a custom of unreported, uninvestigated and unremedied uses of force, is appropriate.

## CONCLUSION

Accordingly, for the reasons articulated above, Defendant Okmulgee County Criminal Justice Authority's Motion for Summary Judgment [Docket No. 40] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS THEREFORE ORDERED** that Defendant Okmulgee County Criminal Justice Authority's Motion for Summary Judgment [Docket No. 40] is **GRANTED IN PART** and **DENIED IN PART**. The Motion [Docket No. 40] is **GRANTED** as to Plaintiffs' municipal liability claim premised upon a custom of unreported, uninvestigated and unremedied uses of force. The Motion [Docket No. 40] is **DENIED** as to Plaintiffs' municipal liability claim premised upon OCCJA's failure to adequately and appropriately train its officers with respect to the use of a less-lethal shotgun.

**IT IS FURTHER ORDERED** that Plaintiffs' municipal liability claim premised upon OCCJA's failure to adequately and appropriately train its officers with respect to the use of a less-lethal shotgun shall be submitted to the trier of fact for trial.

**IT IS FURTHER ORDERED** that the stay implemented on August 14, 2026 [Docket No. 48] is hereby **LIFTED**.

**DATED** this 16th day of November, 2026.

GERALD L. JACKSON
United States Magistrate Judge